IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FREDDIE MARTINEZ,**

        **Plaintiff,**

vs.                                          No. CIV 02-1302 LCS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing filed March 12, 2003 *(Doc. 12)*. Defendant filed a Response on June 16, 2003 *(Doc. 14)* and Plaintiff filed his Reply on July 1, 2003 *(Doc. 15)*. The parties have each consented to having the United States Magistrate Judge conducting all further proceedings in this matter pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being otherwise fully advised, finds that Plaintiff's motion is not well-taken and should be **DENIED**.

**I.  BACKGROUND**

Plaintiff applied for supplemental security income ("SSI") on February 3, 1998, alleging onset of disability on July 13, 1993. R. 127. Plaintiff's application was denied on April 15, 1998,

1

and Plaintiff submitted a Request for Reconsideration on April 27, 1998. R. 110-14, 115. Plaintiff's request for reconsideration was denied on August 15, 1998. R. 116-18. Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ") on September 30, 1998. R. 119. A hearing took place before the ALJ on April 23, 1999. R. 42-68. Plaintiff testified on her own behalf, as did his wife, Vangie Martinez, and his daughter, Michelle Schankenberg. *Id*.

The ALJ issued his decision on December 2, 1999, finding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 96-102. In his decision, the ALJ noted that Plaintiff met the insured status requirements for entitlement to a period of disability and disability insurance benefits at the time of his alleged onset date and last met such requirements on December 31, 1998. R. 96. The ALJ found that Plaintiff has not engaged in post-onset substantial gainful activity. *Id*. The ALJ found that Plaintiff has a "severe" impairment or combination of impairments consisting of hearing loss in the right ear, mild hearing loss in the left ear, history of left his dislocation (twice), hepatomegaly,[1] and history of hepatitis C. R. 97 The ALJ further found that Plaintiff's impairments did not meet or equal in severity any of the disorders described in the Listing of Impairments, 20 C.F.R. Part 4, subpt. P, app. 1, specifically sections 1.00, 2.00 and 1.00. R. 97. The ALJ further found that Plaintiff's testimony and other evidence did not credibly establish symptoms of functional limitations to the extent alleged. R.97. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for a fully range of medium work activity. R. 99. The ALJ applied the Medical-Vocational Guidelines ("the GRIDS") as set forth

---

[1] Hepatomegaly is an enlargement of the liver. STEDMAN'S MEDICAL DICTIONARY (26th ed. 1995) at 787.

in 20 C.F.R. Part 4, subpt. P, app. 2, to direct a finding of nondisability. R. 101.

Plaintiff filed a Request for Review of Hearing Decision/Order on December 16, 1999. R. 122. The Appeal Council issued an Order remanding the matter to the ALJ on January 22, 2000, instructing the ALJ upon remand to (1) obtain additional evidence concerning Plaintiff's impairments, and (2) give further consideration to the Plaintiff's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations; (3) if warranted by the expanded record, obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on the Plaintiff's occupational base; and (4) consider whether Plaintiff's subsequent claim for title XVI benefits filed June 15, 2000 should be consolidated with the claim addressed. R. 124-25.

This matter again came for hearing before the ALJ on October 15, 2001. R., 71-90. Plaintiff testified on his own behalf. *Id*. In addition, the ALJ elicited testimony from a VE. R. 85-90.

The ALJ issued his second decision on February 20, 2002. R. 28-34. In his second opinion, the ALJ found that Plaintiff met the insured statute requirements for entitlement to a period of disability and disability insurance benefits at the time of his alleged onset and continued to meet them through December 31, 1998. R. 28. The ALJ found that Plaintiff has not engaged in post-onset substantial gainful activity. *Id*. The ALJ found that at the times at issue in these claims, Plaintiff had "severe" impairments consisting of hearing loss in the right ear, residual effects of two left hip dislocations, and a history of alcohol abuse resulting in mild dementia and hepatitis C. R. 29. The ALJ found that none of these impairments or combination of impairments met or equaled in severity any of the disorders described in the Listing of Impairments, 20 C.F.R.

Part 4, subpt. P, app. 1, including sections 1.00, 2.00, 5.00 and 12.00. *Id.* The ALJ found that although Plaintiff has symptom-producing medical problems, his testimony and other evidence do not credibly establish functional limitations to the extent alleged. R.29.

The ALJ found that Plaintiff has the residual functional capacity to perform a wide-range of simple, routine, medium-level work activity. R. 32. Relying upon the testimony of the VE, the ALJ found that the Plaintiff could have done other jobs in the economy after his alleged disability onset and prior to December 31, 1998, when he last met the insured status requirements for entitlement to a period of disability and disability insurance benefits under Title II of the Social Security Act. R. The ALJ therefore found Plaintiff not disabled and not entitled to disability insurance benefits under Section 216(i) and 223(a) of the Social Security Act.. *Id* at 33-34.

Plaintiff filed his Complaint in the United States District Court for the District of New Mexico on October 16, 2002, seeking review of the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *See Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the Commissioner." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). A decision by an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on

the record.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits or supplemental security income, a plaintiff must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the plaintiff from engaging in substantial gainful activity.  *Thompson*, 987 F. 2d at 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423 (d)(1)(A)).  At the first four levels of the sequential evaluation process, the plaintiff must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the plaintiff is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  *Id.*

### III.   ANALYSIS

Plaintiff alleges that the ALJ erred by (1) finding that Plaintiff could perform simple, routine work tasks; (2) whether the ALJ erred by failing to call a medical adviser to determine the onset date of disability; and (3) whether the ALJ failed to develop the record in determination Plaintiff's residual functional capacity.

**A.   Whether the testimony of the VE does not constitute substantial evidence that there are jobs in the economy that Plaintiff is able to perform**

At the time of the hearing, the ALJ queried the VE about Plaintiff's past relevant work. R. 86.  The VE testified that Plaintiff's past work as a garbage collector was unskilled and very

heavy.  R. 86.  In constructing his hypothetical for the VE, the ALJ elicited testimony from the Plaintiff that he has a ninth grade education, but has difficulty writing and spelling beyond simple words.  R. 87.   When presented with Plaintiff's vocational background, and presented with limitations including lifting 50 pounds occasionally; lifting 25 pounds frequently; being able to sit, stand, or walk for six hours in an eight-hour work day with normal breaks; only able to stoop, kneel, crouch, or crawl occasionally; has some limitation in hearing where there is a great deal of background noise; and has had his fourth digit on the right hand amputated, the VE testified that jobs exist in the national and regional economy that a person with such limitations could perform.  R. 87-88.  The VE identified the job of a dining room attendant, an unskilled medium job, with 10,000 jobs in the region and 400,000 nationally; and janitor, also an unskilled medium job, with 60,000 jobs in the region and over 3 million jobs nationally. R. 88.

Plaintiff argues that given the ALJ's determination that Plaintiff could perform "simple, routine work tasks" necessarily precludes him from performing any job identified in the Dictionary of Occupational Titles ("DOT") as having a reasoning level of more than one.  Pl. Memo. at 4. The DOT provides that a reasoning level of one requires "commonsense understanding to carry out simple one- or two-step instructions."[2]  A reasoning level of two requires "common sense understanding to carry out detailed but uninvolved written or oral instructions."[3]

The record, however, does not reflect that Plaintiff was specifically precluded from performing any jobs requiring a reasoning level of more than one.  The consultative examiner

---

[2]     DICTIONARY OF OCCUPATIONAL TITLES, vol. II, app. C, Scale of General Educational Development at 1011 (4th ed. Revised 1991).

[3]     *Id*.

6

("CE"), Gary Hachadourian, Ph.D., indicated that at the time of his examination, Plaintiff was able to provide all of his own history, understood questions and responses fluently, his consciousness was clear, his thinking processes were logical and coherent, and he did not appear to have any trouble focusing or in maintaining concentration.  R. 215-16.  Dr. Hachadourian noted that Plaintiff did appear to have a neurological deficit, some trouble with organizing and planning his behavior, some impairment with short-term memory, but a comparatively stronger long-term memory. R. 216.  Dr. Hachadourian noted that the results of the examination were "consistent with probable neurological damage, in his case, most likely due to heavy and prolonged drinking."  *Id*.   Dr. Hachadourian noted that testing indicated that Plaintiff has a verbal IQ of 73, a performance IQ of 80, and a full scale IQ of 76.  R. 217.  The CE noted that Plaintiff has held several long-term jobs even while drinking heavily, indicating that Plaintiff was able to get along with people, specifically supervisors.  *Id*.  The CE concluded that  "it doesn't appear that [Plaintiff's alcohol-related] dementia is severe enough to prevent his being able to care for himself or carry out simple every day tasks."  *Id*.

In a Daily Activities Questionnaire, Plaintiff indicated that although he is unable to finish projects or activities because he gets too tired, Plaintiff also indicated that he has no trouble following instructions and carrying  them out.  R. 163.  The ALJ found that Plaintiff could perform "simple, routine medium-level work activity."  R. 33.  There is not substantial evidence in the record to indicate that the limitation to "simple, routine" work activity necessarily means that Plaintiff only has "commonsense understanding to carry out simple one- or two-step instructions," and is precluded from performing jobs which require "common sense understanding to carry out detailed but uninvolved written or oral instructions."

This matter may be distinguished from the issue addressed by the Tenth Circuit in *Haddock v. Apfel* where there was an actual apparent conflict between the DOT and the testimony of the VE, which had relied upon by the ALJ. *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999).

As the Tenth Circuit noted in *Haddock*, "the Dictionary [of Occupational Titles] uses a different and considerably more extensive classification scheme for skill requirements than the agency's regulations. Section 404.1568 [ of 20 C.F.R.] indicates that an ALJ should use information provided by the Dictionary to assess occupational skill requirements, but it is evident that the Dictionary's information about skills must be massaged, if you will, into the agency's three classifications (unskilled, semi-skilled, skilled)."*Id*. at 1089.  In *Haddock*, the Tenth Circuit did not hold that the Dictionary of Occupational Titles "trumps" a VE's testimony when there is a conflict about the nature of a job, but rather noted "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091.

There is no such conflict between the DOT and the testimony of the VE upon which the ALJ relied in this matter with regard to Plaintiff's ability to perform simple, routine work.  The ALJ did not err in relying upon the testimony of the VE in finding that Plaintiff could perform jobs in the regional and national economy, even if the jobs identified require a reasoning level of 2.

The ALJ properly consider the report of the CE, Dr. Hachadourian, in making his RFC assessment, and such assessment is supported by substantial evidence.   Dr. Hachadourian noted Plaintiff's fluent communications skills, his clear consciousness, his logical and coherent thinking

processes, and Plaintiff's ability to focus and maintain concentration. R. 215-16.  The ALJ's RFC assessment reflects the neurological deficit which Dr. Hachadourian noted.  R. 216. Moreover, as the CE noted, Plaintiff has held several long-term jobs even while drinking heavily.  *Id*.  The CE concluded that "it doesn't appear that [Plaintiff's alcohol-related] dementia is severe enough to prevent his being able to care for himself or carry out simple every day tasks," and such conclusion is reflect in the ALJ's determination that Plaintiff can perform "simple, routine" work.  Thus, the ALJ's RFC assessment  is supported by substantial evidence.

Plaintiff further alleges that the ALJ erred in relying upon testimony of the VE insofar as the VE identified two jobs, one of which required frequent stooping and crouching.   However, the second job identified by the VE does not conflict with the information provided by the ALJ in the hypothetical posed, and the identification of such job is sufficient to support the determination by the ALJ. *See* 20 C.F.R. § 416.966.  The ALJ determination that a job exists that Plaintiff could perform in the regional and national economy is supported by substantial evidence.

**B.**   **Whether the ALJ erred by failing to call a medical advisor to determine the onset date of disability**

Plaintiff argues that because "loss of hearing, hip pain, dementia and hepatitis C may all be progressive impairments," the ALJ should have called a medical advisor to determine the onset date of disability.  Plaintiff was apparently found eligible for supplemental security income (SSI) on February 22, 2002.  Pl. Response Ex. C; R. 88-89.  The Tenth Circuit has noted that the ALJ should call a medical expert to testify as to the onset date of disability only where the onset date must be inferred and only if the medical evidence of onset is ambiguous. *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1994)(internal citations omitted).  In applying Social Security Ruling 83-20,

9

the Court in *Reid* noted "Ruling 83-20 defines the onset date as 'the first day an individual is disabled as defined in the Act and the regulations.' Factors relevant to the determination are the claimant's allegation of an onset date, his work history, and the medical evidence, with medical evidence being the primary element in determining onset date." *Reid*, 71 F.3d at 373 (internal citation omitted).

Plaintiff's insured status expired on December 31, 1998, and the record does not contain any information indicating a worsening of any of Plaintiff's impairments until the February 2000 x-rays, which showed a prominent disc bulge at L5-T and severe bilateral facet arthropathy, with resultant foraminal compression of the existing L5 nerve root; mild-moderate left-right central stenosis due to facet and ligamentum flavum hypertrophy; and a disc bulge and moderately severe facet arthropathy at L4-5 without significant central stenosis or definite foraminal compression of nerve root. R. 254-55. Plaintiff's problems were long-standing in nature – his hips dislocated in 1968[4] and again in 1977 (R. 281), a diagnosis of hepatis C for which Plaintiff refused treatment in March 2000 (R. 240), and back pain since 1990 (R. 80). Nevertheless, Plaintiff received no treatment for these impairments for a lengthy period of time, and continued to work at his heavy-exertion job until 1993. R. 79-81. Plaintiff did not seek medical treatment for his back pain until approximately 1998. An x-ray of Plaintiff's hips conducted on March 23, 1998 indicate that his hips were unremarkable, as were the bones of the pelvis and the sacrioiliac joints. R. 203. Plaintiff's right tympanic membrane had ruptured many year ago; however the CE noted in 1998 that Plaintiff's hearing perception "was intact to whispered and spoken word at 12 inches and 20

---

[4] Plaintiff's accounts of when his hip dislocated have varied; he reported to the CE on March 24, 1998 that his left hip dislocated in 1967 and 1977. R. 204.

feet bilaterally, but with diminished vibratory conduction and perception on the right side noted." R. 205.  With regard to Plaintiff's back, the CE noted in 1998 that Plaintiff had a lumbrosacral flexion of 40 degrees with 10 degrees of sidebending; and hip flexion of 90 degrees forward and 10 degrees back extension on the left side, and 30 degrees on the right side R. 205.  The CE further noted that Plaintiff's gait was steady and broad based. *Id*.  The CE noted limitations by lumbosacral flexion on squatting, stooping, and lifting, which the ALJ incorporated into the hypothetical posed to the VE.  R. 206.

The records from the relevant period do not contain information indicating that Plaintiff's long-standing impairments were progressively worsening. Considering Plaintiff's allegations of his disability onset date, his work history, and the medical evidence, it does not appear that the onset date needed to be inferred, nor does it appear that the medical evidence of onset was ambiguous. As such, the ALJ was not required to call a medical advisor to testify as to the onset date of Plaintiff's alleged disability.  *Reid*, 71 F.3d at 373-4.

## C.  Whether the ALJ failed to develop the record in determining Plaintiff's residual functional capacity

Plaintiff claims that the ALJ failed to adequately develop the record in determining Plaintiff's residual functional capacity.   The burden to prove disability in a social security case is on the claimant. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). However, because a Social Security disability hearing is a nonadversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-361 (10th Cir. 1993).  As such, "an ALJ has the duty to develop the record by obtaining pertinent,

available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). The degree of effort required by the ALJ to develop the record varies from case to case. Cf. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (noting that whether ALJ has adequately developed record must be determined on case by case basis); *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983). The ALJ is not required to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. *Hawkins*, 113 F.3d at 1168 (citing generally, *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994)).   The applicable standard is that "of reasonable good judgment. The duty to develop the record is limited to 'fully and fairly developing the record as to material issues.'" *Hawkins*, 113 F.3d at 1168 (citing *Baca v. Department of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)).

In the instant matter, the Appeal Council issued an Order remanding the matter to the ALJ on January 22, 2000, instructing the ALJ upon remand to (1) obtain additional evidence concerning Plaintiff's impairments, and (2) give further consideration to the Plaintiff's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations; (3) if warranted by the expanded record, obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on the Plaintiff's occupational base; and (4) consider whether Plaintiff's subsequent claim for title XVI benefits filed June 15, 2000 should be consolidated with the claim addressed. R. 124-25.

Upon remand, the ALJ sought additional medical evidence, and further considered the information in the record from the CE, and the reviews by the Social Security Administration's

program physicians which noted that Plaintiff retained the physical capacity to perform medium work with certain limitations on stopping, kneeling, crouching, and crawling. R. 31. Moreover, instead of applying the GRIDS, the ALJ obtained evidence from a VE to determine the physical requirements of Plaintiff's previous jobs, to determine the effect of Plaintiff's limitations on his occupations base, and to determine whether there was work that Plaintiff could do. R. 85-88.

The ALJ thus met his duty "fully and fairly develop[] the record as to material issues.'" *Hawkins*, 113 F.3d at 1168 (internal citation omitted). The ALJ adequately developed the record in determining Plaintiff's RFC, and his determination is supported by substantial evidence in the record.

### IV.   CONCLUSION

I find that Plaintiff's Plaintiff's Motion to Reverse and Remand for a Rehearing filed March 12, 2003 *(Doc. 12)* is not well-taken and should be **DENIED**, that the Commissioner's decision be **AFFIRMED**, and that this action be **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing filed March 12, 2003 *(Doc. 12)* is **DENIED.**

**IT IS FURTHER ORDERED** that this matter be **DISMISSED WITH PREJUDICE.**

A Judgment in accordance with this Memorandum Opinion and Order shall be entered forthwith.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**